OGDEN CITY RAILWAY CO., APPELLANT, *v.* OGDEN CITY, AND OTHERS, RESPONDENTS.

EMINENT DOMAIN.—STREET RAILWAYS.—ELECTRIC ROAD.—Under section 3841, 2 Comp. Laws 1888, providing that the right of eminent domain may be exercised in behalf of steam and horse railroads; *held*, that by implication this right may be exercised in behalf of electrical railways.

MUNICIPAL CORPORATIONS.—STREET RAILWAYS.—PUBLIC BENEFITS.— A city had granted plaintiff an exclusive right to lay railway tracks on a certain street, and afterwards granted the defendant railway company the right to lay a double tracked electric railway on the same street. Plaintiff sued the defendant railway company and the city alleging the above facts, and that plaintiff had constructed a single tracked railway with turnouts on the street, that if it were to lay down another the two would occupy twenty feet of the street, that if two additional tracks were laid by defendant the street would be so obstructed

by the four tracks as greatly to interfere with other modes of travel, and that if poles and wires, as threatened, should be placed in front of plaintiff's property abutting on the street it would be seriously damaged thereby, but the allegations of the complaint did not show that one additional track would have materially obstructed travel by other modes, and were not sufficient to warrant the granting of an injunction on the ground that the construction of the railway would damage the abutting property by materially interfering with rights appurtenant thereto; *held*, that a demurrer to the complaint, as not stating a cause of action, was properly sustained, and impliedly the same points affirmed as decided in *Henderson* v. *Ogden City Ry. Co., ante.*

APPEAL from a judgment upon demurrer of the district court of the first judicial district.

The complaint alleged the grant to the Ogden City Railway Co., made August 7, 1883, which was exclusive, and the acceptance and performance of the conditions thereof by the grantee, that the plaintiff had acted on the grant, and expended large sums of money, issued bonds, and built its tracks, etc.; that ''plaintiff owns a valuable tract of land on Washington avenue, and pays taxes on a large amount of real estate and personalty; that said Twenty-fifth street, from the depot to the junction with Washington avenue, and Washington avenue are the main business streets of the city, and on these plaintiff has a single track with sidings and turnouts, and has the right to, and will lay another track thereon; that these two tracks will require about twenty feet of space in the center of said street; that if two additional tracks, as threatened, are placed upon said streets it will so obstruct them as to greatly interfere with travel thereon, and there will not be space enough for the ordinary business, and for vehicles to pass and repass, and that if poles and wires are strung as threat-

ened, in front of property owned by plaintiff, it will prevent the ingress and egress to plaintiff's property on Washington avenue, and greatly damage it in value.". Then followed the ordinance, set out *in haec verba*, granting the franchise to the defendants; that the city council had not the power to pass this ordinance, for the plaintiff's franchise was exclusive; that the existence of said ordinance upon the records of the city is a cloud upon the title to plaintiff's railroad property, and "if not declared void will work great and irreparable injury in this: that the contract obtained by plaintiff from the city of Ogden, together with its line of railways, have become a valuable property, and the said bonds issued by plaintiff are a profitable security, and the existence of this ordinance will greatly depreciate the value of plaintiff's property and security, and will deprive plaintiff from the realization of money from the sale of its second mortgage bonds, which are intended as a fund to perfect and extend its system of street railway;" then the complaint alleged that certain of the defendants "threaten and intend, by virtue of the said ordinance, to enter upon said Twenty-fourth, Twenty-fifth, Twenty-second streets and Washington avenue, and other streets now occupied by plaintiff with its street railway, and build thereon two additional tracks with necessary appliances to an electric street railroad, thereby interfering with the operation of plaintiff's road and endangering the lives of its passengers, employés, and the lives of the horses and mules used in operating the road, and interfering with the public use and travel over said streets." The complaint prayed an injunction against the defendants from proceeding, and that the ordinance granting a franchise to the defendants be declared null and void. The defendants all joined in a demurrer to the effect that the complaint did not state

14

facts sufficient to constitute a cause of action. The remaining facts appear from the opinion.

*Messrs. Rhodes and Hudson,* for the appellant.

*Mr. A. R. Haywood, Mr. H. P. Henderson,* and *Mr. Ogden Niles,* for the respondents.

ZANE, C. J.:

The complaint filed in the court below in this case, among other things, alleged that on August 7, 1883, the city council of Ogden City adopted an ordinance granting to the plaintiff permission to lay down a double-tracked street railway on Twenty-fifth street and Washington avenue, and that in June, 1890, the city, upon certain conditions named in the ordinance, gave the defendants permission to construct a double-track railway on the same streets, to be operated by electricity; that these are the main business streets of the city; that the plaintiff had constructed on them a single track, with turnouts; that, if it were to lay down another, the two would occupy about twenty feet in width; and that, if two additional tracks, as threatened by the defendants, should be laid down, the streets would be so obstructed by the four tracks as to greatly interfere with other modes of travel; and that, if poles and wires, as threatened, should be placed in front of the property owned by plaintiff, it would be seriously damaged thereby. The complaint prays that the ordinance granting the permission to defendants to lay down their tracks may be declared null and void so far as it purports to grant to defendants any right to construct their road on the streets, and that they be enjoined from filing the bond exacted as one of the conditions of the permit. A prayer for general relief is also added. To the complaint the

defendants interposed a demurrer, which the court below sustained, and also refused an injunction. From the decision of the court the plaintiff has appealed to this court, and assigns it as error..

The points urged by plaintiff upon the argument of this appeal, call for a consideration of the authority of the city council to give permission to individuals and corporations to construct railways upon the public streets, and to control their location and operation thereon. The city council of Ogden City, by virtue of its general authority over such streets, was authorized to permit street car companies to construct and operate their roads upon them; but without special authority the council could not permit ordinary railroads, with trains propelled by steam power, to do so. The permission is given to facilitate public travel, and for the benefit and convenience of the public. The permission to such companies cannot confer upon them an exclusive right. The right so given exists in common with the right to travel on the streets in wagons and by other vehicles, and on horseback and on foot, in all legitimate ways. Such persons or companies, in the observance of all reasonable care and caution, have the right to pass their cars over their tracks as often as the public convenience requires and the demand will justify. The cars have the right of way, and the travel by other means and in other ways, must turn out, because it can and the cars cannot. The city authorities have the right to require the tracks to be so constructed and kept in repair that travel by other modes can conveniently and safely use them. It is the right and duty of the city to exercise such reasonable control over the construction, repair, operation, and business of street railways as the safety, convenience, and good of the public demands. The private rights of the owners and occupants of property abutting on the street must also be

protected, for the law is that such abutters have an ease-ment in the street appurtenant to their property, of which they cannot be deprived without their consent, or without just compensation, in pursuance of the law of eminent domain; and the council has the power, and it is its duty, to say that no more than a reasonable portion of the street shall be occupied by street railways, and it has no right to consent that more shall be so used. In his work on Municipal Corporations, Judge Dillon says:

"The author regards the appropriation under legislative authority of a reasonable portion of the street for a horse railway, constructed on the gradual surface of the street, and used under municipal regulation in the ordinary mode, to be such a use as falls within the purposes for which the streets are dedicated or acquired under the power of eminent domain. When thus authorized, and so regulated by the public authorities as not to destroy the ordinary and usual street uses, this is a public use within the fair scope of the intention of the proprietor when he dedicated the street or was paid for property to be used as a street. Such proprietor must be taken to contemplate all improved and more convenient modes of use which are reasonably consistent with the use of the street by ordinary vehicles and in the usual modes. * * * The limitations being that such use must not deprive the abutter of his property rights and ease-ments in the streets, or destroy the ordinary uses of the streets as a public and common highway open to all." If separate tracks for two or more railroad companies on a street with cars operated on them would increase the hazards, or seriously obstruct travel thereon in other ways, or interfere with the rights of abutters, such indi-viduals or companies should be limited to the common use of the same track or tracks. This could be done by suitable conditions, reservations, or limitations at the

time of the grant of the right of way, or, in the absence of them, in pursuance of the law of eminent domain. Section 3841 of the Compiled Laws of Utah is as follows: "The right of eminent domain may be exercised in behalf of the following public uses:    *    *    *    (3) Wharves, *    *    * steam and horse railroads.    *    *    * Sec. 3843. The private property which may be taken under this chapter includes: (1) All real property belonging to any person. (2) Lands belonging to this territory, or to any county, incorporated city, village, or town, not appropriated to some public use. (3) Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated.    *    *    *    (5) All rights of way for any and all purposes mentioned in section 3841, and any and all structures and improvements thereon, and the lands held or used in connection therewith, shall be subject to be connected with, crossed, or intersected by any other right of way or improvement or structure thereon. They shall also be subject to a limited use in common with the owner thereof when necessary; but such uses of crossings, intersections, and connections shall be made in manner most compatible with the greatest public benefit and least private injury."

Electrical railways were not mentioned in the act, but horse and steam railways were. At that time horse and steam power was used, because thought to be the best. Electricity was not then known as a car-motor; but ingenuity and invention have since subjected it to that use, and it is being substituted largely for the others; and we have no hesitation in holding that under the statute the right of eminent domain may be exercised, in proper cases, in behalf of electrical roads as well as for steam and horse railways.

While the owner of a railway may have an interest in

its property, that interest is not more inviolable and sacred than other interests in property. The private interest is one thing, and the public use is another. The property is taken for the public use, not to transfer the interest that one person has in the property to another person. Such transfer incidentally and necessarily follows in order that the public benefit may be enjoyed. When the tracks of one company on a street are sufficient for the business of two or more companies they should all be required to use them, and the hazards and inconveniences and obstructions to travel by other modes should be limited to the tracks of the one company. If the interest of each company in the railroad property used in common is sufficient to enable them to accommodate the public travel, that is sufficient. It appears from the allegations of the complaint that the plaintiff had laid down but one track on the streets named, and that the defendants had not commenced the construction of theirs. The court below was asked to declare the ordinance giving the defendants the right of way on them void. If it had been so decreed the defendants could not have laid down one track, and it does not appear that one additional track would have materially obstructed travel by other modes, or that it would have interfered with plaintiff's private easement on the streets appurtenant to its abutting property. The effect of the decree asked by the plaintiff would have been to deny the defendants any permission on the street, even under the law of eminent domain; for any rights obtained under that law would not have authorized them to construct their road on the street without the permission of the city council. The allegations of fact are not sufficient to warrant an injunction on the ground that the construction of the defendants' railway would damage the abutting property by materially interfering with rights

appurtenant thereto.    Except so far as we have considered this case it is analogous to the case of *Henderson* v. *Railway Co., ante* (decided at the present term). The judgment of the court below is affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.